IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PIERRE CARDELL BROWN,

          Plaintiff,

v.

LINDSAY WALKER, JASON CHATMAN,
SANDRA ASHTON, and MATTHEW BLAIR,

          Defendants.[1]

OPINION and ORDER

17-cv-588-jdp

Pro se plaintiff Pierre Cardell Brown alleges that defendant prison officials violated his Eighth Amendment right against cruel and unusual punishment by housing him in a cell with feces on the window screen for three months. Both sides have filed motions for summary judgment. There are disputed issues of material fact regarding whether defendants Jason Chatman, Sandra Ashton, and Matthew Blair were deliberately indifferent to the conditions Brown faced, so I will deny both sides' motions for summary judgment on those claims and those claims will proceed to trial. I will grant defendants' motion for summary judgment on Brown's claim against defendant Lindsay Walker because the undisputed facts show that Walker was not deliberately indifferent to the cell conditions.

---

[1] I have amended the caption to include defendants' first names. Following the events of this lawsuit, defendant Ashton changed her last name to Darling-Jezuit. But because her name was Ashton at the time relevant to this lawsuit, I will use that name throughout the opinion.

## UNDISPUTED FACTS

The following facts are drawn from the parties' summary judgment submissions and are undisputed unless otherwise noted.

Plaintiff Pierre Cardell Brown is a prisoner currently housed in the Minnesota prison system. The events at issue in this case took place while Brown was incarcerated at Columbia Correctional Institution (CCI), in Portage, Wisconsin. At all points relevant to this case, Brown was housed in the Restrictive Housing Unit.

Defendants all worked at CCI. Lindsay Walker was the unit manager for Restrictive Housing Unit 2. Jason Chatman was a correctional sergeant. Sandra Ashton and Matthew Blair were correctional officers.

On March 8, 2017, Brown was moved into a new cell. Brown says that he smelled feces immediately upon entering the cell. Brown says that the smell was coming from the outermost window of his cell (neither party provides a detailed description of the window or where it was located, but I can infer that the window at issue was located in the back of the cell and was exposed to the outside). Brown complained to correctional officers immediately after discovering feces smeared on the window screen. Brown says that officers brushed him off; defendants dispute that officers would ignore this type of complaint.

Brown says he then continued to complain to defendant correctional officers Chatman, Ashton, and Blair about the conditions in his cell "everyday" over a period of three months, but they did nothing to fix the problem. Dkt. 39, at 1. Defendants say that they did respond to Brown's complaints, although they provide only a vague timeline of their efforts.

Sergeant Chatman says that sometime in March 2017, Brown told him about the feces on his window screen, but he says that after Brown complained he had an inmate worker—

referred to by the institution as a "swamper"—clean Brown's cell. Ashton says that she "vaguely recall[s]" Brown complaining to her about the feces on his window screen and that either she or Sergeant Vines, who is not a defendant in this case, investigated the complaint and saw toothpaste but no feces on the window screen. Dkt. 55, at 2. Blair says that Brown did not complain to him about feces on his window, and that if Brown had complained either he or a sergeant would have investigated the complaint. Defendants also say that Brown had access to cleaning supplies every Friday.

Brown says that the standard cleaning supplies—towels with "cleaning spray" on them—could not remove the "sunbaked" feces. Brown wrote defendant Unit Manager Walker an interview request complaining about the feces on his window screen. Walker says that after receiving the interview request, she contacted staff about the issue, and staff told her that they believed it was toothpaste on the window screen and that Brown refused cleaning supplies when staff offered them. (Statements made by unnamed staff members to Walker are hearsay and therefore inadmissible if introduced to demonstrate that staff actually examined the window screen or offered Brown cleaning supplies. But Walker can introduce these statements for the purposes of explaining why she did not think it was necessary to investigate the claim further.)

After Brown wrote Walker, but sometime before April 20, 2017, Brown saw Walker on his way to a doctor's appointment. At this point, Walker told Brown that she would have his cell cleaned. Brown says that nothing was done after this meeting. But Walker says that she directed staff to have Brown and his cellmate removed so that the window could be cleaned. She also told Brown that "the stuff he was complaining about was stuck in the screens of the window and there were attempts to clean it before but it could not be cleaned and there was

3

no evidence that it was feces." Dkt. 35-3, at 1. When staff went to remove Brown from his cell, he refused to leave, saying that the attempt at cleaning the window would be futile.

In late April 2017, Brown's cellmate, Ivan Johnson, submitted an inmate grievance complaining about feeling sick because of the feces on the window screen and about staff's failure to clean it properly.

On April 28, 2017, Brown wrote a Health Service request complaining that the feces was making him sick: it was hard to breathe, it exacerbated his asthma, and he broke out in a rash. Brown was scheduled for an appointment with the Health Services Unit for May 2, 2017.

On April 29, 2017, Brown placed a blanket over the window. Officer Hitz, who is not a defendant in this case, ordered Brown to take the blanket down. Brown says that he refused to take the blanket down because the blanket blocked the smell from the feces. Hitz offered Brown cleaning supplies but Brown refused them. Dkt. 35-4, at 1. Brown says he refused the cleaning supplies because they would not be effective in removing the feces. Hitz's conduct report states that Brown told Hitz "you come clean it" when Hitz offered him cleaning supplies. *Id.* Hitz gave Brown a conduct report for disobeying orders and disrespect. *Id.*

Brown wrote Walker the next day, telling her that he received a conduct report for covering the window. Walker responded saying that she was not aware of the conduct report, but that maintenance would check Brown's window screen on May 2—the day that the windows were scheduled to be unlocked for the summer—and they would order a new screen if necessary. *See* Dkt. 40-1, at 3. This use was resolved alongside Johnson's grievance, which was dismissed after prison officials reported that maintenance staff determined that the material on the screen was not feces, but rather "corrosion of the screen," and staff ordered a new screen for the cell. Dkt. 40-2, at 2. But it appears that the screen was not quickly replaced,

4

because Brown says that his cell smelled of feces for the entire time he was in it, into June 2017.

On May 2, defendants say that Brown and his cellmate were removed from their cell and the window screen was cleaned by a swamper. In support, defendants cite an institution logbook stating that someone (it's unclear whether this was a swamper inmate or a staff member) cleaned the window screen when Brown and his cellmate went to the showers. Brown was not in the room when the window was cleaned, but he says that swampers were "never" in his cell, Dkt. 58, at 1, and that the smell remained the entire time he was in his cell. So I take him to be saying that regardless whether someone attempted to clean his cell this day, the feces was not actually removed.

Defendants say that if ordinary measures fail to completely clean a cell, staff will use a pressure washer to complete the cleaning. But there is no indication that a pressure washer was used after any of Brown's complaints.

Between May 2 and June 8, 2017, (when Brown was transferred to Dodge Correctional Institution), Walker did not receive any further complaints from Brown. But I take Brown to be saying that he continued to complain to the correctional officer defendants.

ANALYSIS

Brown contends that defendants Walker, Chatman, Ashton, and Blair violated his Eighth Amendment right against cruel and unusual punishment by acting with deliberate indifference to the conditions of his confinement. In particular, Brown alleges that he was forced to live in a cell with feces smeared on the screen of the back window for three months, and that the conditions were severe enough to cause him asthma attacks and skin rashes. He

5

also alleges that he alerted defendants to the substandard condition but none of the defendants fixed it. Both Brown and defendants have filed motions for summary judgment.

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When, as here, the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue at trial; [and] then require[s] that party to go beyond the pleadings and affirmatively establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment against that party is appropriate. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (quoting *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990)). "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inference from those facts, in favor of . . . the non-moving party.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

Under the Eighth Amendment, prisoners are guaranteed humane conditions of confinement for their health and safety. *Rice ex rel. Rice v. Corr. Med. Serv's*, 675 F.3d 650, 664 (7th Cir. 2012) ("Incarcerated persons are entitled to confinement under humane conditions which provide for their 'basic human needs.'"). For example, prisoners must receive adequate

food, clothing, and shelter, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), including sanitary conditions of confinement, *see, e.g.*, *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("exposure to human waste carries particular weight in the conditions calculus"); *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) ("courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste"). To prevail on a conditions-of-confinement claim, a prisoner must prove two things: (1) the adverse condition is sufficiently serious; and (2) the prison official has been deliberately indifferent to that condition. *Rice*, 675 F.3d at 664–65. The parties dispute both elements.

**A. Adverse condition is sufficiently serious**

For an adverse condition to be sufficiently serious, it must be "extreme," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and it must deprive the prisoner of a "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Brown alleges that he was housed in a cell with feces smeared on the window for three months. Defendants contend that the conditions of Brown's confinement were not sufficiently serious for three reasons. First, defendants say that Brown was offered cleaning supplies. But Brown presents evidence suggesting that standard cleaning supplies were not sufficient to clean the feces off the window. It is somewhat unclear whether he means that a person couldn't effectively clean the outside of the screen with those supplies or whether it was just impossible to scrub the "sunbaked" feces off with the given supplies. But the evidence of prison officials' apparently futile attempts to clean the window support Brown's position that normal cleaning supplies wouldn't work to clean the feces.

Second, defendants say that they do not believe that there was feces on Brown's window. In particular, defendant Walker states that when officers investigated the situation,

7

they told her that the substance on the window smelled and looked like toothpaste, not feces, and defendant Ashton says that when Brown complained, either she or Sergeant Vines, inspected the window and found toothpaste but no feces. But Brown disputes this: in his declaration he says that there was feces on the window, and that he was sickened by the smell. This is enough to create a dispute of material fact on this issue.

Third, defendants say that the feces was limited to a small portion of Brown's cell, by which I take them to mean that the problem was simply not serious enough to implicate the Eighth Amendment. Brown does not provide much detail regarding how much fecal matter was on the window. But he does say that he and his cellmate were sickened by the feces, that it smelled bad enough for him to attempt to cover it with a blanket, and that it caused him to develop a rash, have difficulty breathing, and suffer asthma attacks.

Brown does not suggest that he has any medical training, so he is not qualified to testify about the causes of his medical problems. But I will credit his layperson testimony that the smell made it hard for him to breathe, and that it nauseated both him and his cellmate. He also alleges that he was forced to live with the smell for three months, which makes it more likely that the condition was serious enough to violate the Constitution. *See, e.g.*, *DeSpain*, 264 F.3d at 974 ("the length of exposure to the conditions is often of prime importance"); *see also Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994) ("the length of time required before a constitutional violation is made out decreases as the level of filthiness endured increases"). So I conclude that Brown has provided enough facts about the seriousness of the condition to create a dispute of material fact on the seriousness prong.

**B. Deliberate indifference**

To prevail on an Eighth Amendment claim, Brown must still show that defendants were deliberately indifferent to the adverse condition. *Rice*, 675 F.3d at 665. A prison official "is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it." *Id.* In other words, to establish that defendants were deliberately indifferent, Brown must show two things: (1) that defendants were subjectively aware of the feces; and (2) that defendants consciously disregarded it.

**1. Correctional officer defendants**

Brown does not discuss each of the correctional officer defendants separately. Rather, he alleges generally that he told Chatman, Ashton, and Blair about the feces on his window "everyday" but they did nothing to fix the problem. Chapman and Ashton admit that Brown told them about the problem. Blair says that Brown did not complain to him, but Brown's statement is enough to create a factual dispute on the question whether all three defendants were aware of the problem. Because defendants say that they do not believe that the material on the screen was feces, and because staff reports indicated that the material was toothpaste or "corrosion," I take them to be arguing that they were not aware that Brown's cell contained feces as opposed to some other material. But Brown says that his cell smelled of feces, which raises a reasonable inference that unit staff knew what the problem was.

Defendants contend that they did not act with deliberate indifference to the problem because they and various nondefendant coworkers took reasonable steps to address Brown's cell conditions. And they argue that Brown had the opportunity to clean the window himself using the cleaning supplies that are offered to inmates every week. But Brown told prison staff that the available cleaning supplies would not clean the window. And as prison staff's own

9

efforts indicate, they were unable to clean the window either, leaving Brown to continue to complain about the feces. So a reasonable jury could infer that defendants were subjectively aware that the problem had not been resolved.

Defendants also say that Brown's cell was cleaned by swampers on two occasions. First, Chatman says that after Brown first complained to him in March 2017, he had a swamper clean Brown's cell. Second, defendants say that a swamper cleaned Brown's window screen on May 2, 2017. Brown contends that swampers "never" cleaned his cell. Brown doesn't have the personal knowledge necessary to completely dispute this point, because he concedes that he occasionally left the cell; swampers could have cleaned it then. But I take him to mean that swampers didn't accomplish their task, because the feces remained for the entire three months. And Brown says that he continued to complain to defendants that the feces remained, which put defendants on notice that the problem persisted even after staff made efforts to fix it. So a reasonable jury could conclude that defendants should have done more but chose not to. In particular, defendants say that a pressure washer is used for hard-to-clean cell conditions. But even after the swampers' cleaning efforts failed, no one used a pressure washer to clean Brown's cell, despite his continued complaints about the feces. Therefore, I conclude that there are disputed issues of material fact about both the severity of the conditions and defendants' subjective intent toward the conditions.

It does not appear from the record that any further actions were taken to address the condition after May 2, 2017. But Brown says that he complained to the correctional officer defendants "every day." At this point, Brown's statements that the problem was never fixed and that he continued to tell the correctional officers about the problem every day are sufficient to create a dispute of material fact.

Defendants contend that even if there are genuine factual disputes concerning Brown's claims, they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Put a bit more bluntly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A right is "clearly established" when a reasonable official would know that his "conduct was unlawful in the situation he confronted." *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 915 (7th Cir. 2011) (citations omitted).

It has long been clear that keeping a prisoner in a cell containing human waste may violate the prisoner's Eighth Amendment rights. *See, e.g.*, *Vinning-El v. Long*, 482 F.3d 923 (7th Cir. 2007); *Isby v. Clark*, 100 F.3d 502 (7th Cir. 1996). Defendants argue that Brown fails to identify case law showing that officers could be held liable despite the fact that they offered cleaning supplies to the prisoner. That's cutting the qualified-immunity analysis too fine. Brown's allegations here are that defendants were all aware that the various efforts undertaken by prison officials failed to remove the feces from his cell. Like any other Eighth Amendment case, defendants' efforts may be relevant on the question whether they were deliberately indifferent to the cell conditions, but those efforts don't change the fact that is already clearly established that prison officials may violate the Eighth Amendment by leaving a prisoner in a cell with human waste. I will deny both sides' motions for summary judgment and the case will proceed to trial on Brown's Eighth Amendment claims against the correctional officer defendants.

### 2. Defendant Unit Manager Walker

As for defendant Walker, Brown alleges that Walker knew about the conditions in his cell and did not fix the problem. It is clear from the record that Walker was subjectively aware of the alleged condition of Brown's cell by April 20, 2017. This leaves the question whether Walker consciously disregarded the condition.

After Brown first complained, Walker contacted staff to investigate the allegations in the interview request. She says that she did not think the condition was serious because staff told her that they had investigated the claim and that the substance on the window was toothpaste and not feces. Walker also says she ordered staff to have Brown removed from his cell so that it could be cleaned. These actions were reasonable steps to address the condition, and tend to show that Walker did not consciously disregard Brown's complaints.

Nonetheless, Brown continued to complain. So, Walker directed officers to have Brown removed so the window could be cleaned. Walker had a right to rely on the actions of other officers and assume that her orders were carried our properly. *See Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009) ("[N]o prisoner is entitled to insist that one employee do another's job."). There is no evidence suggesting that Walker was told by either staff or Brown that further action was necessary to remedy the problem. Therefore, no reasonable jury could conclude that Walker was deliberately indifferent to the conditions of Brown's cell. So I will deny Brown's motion for summary judgment on this claim, grant defendants' motion for summary judgment, and dismiss Walker from the lawsuit.

### C. Pretrial-submission deadlines

In response to defendants' motion to stay pretrial-submission deadlines, I extended the pretrial-submission deadline to August 16, 2019. I will also follow this order with a "trial

preparation order" that will include specific instructions about how Brown should present his claims at trial.

ORDER

IT IS ORDERED that:

1. Plaintiff Pierre Cardell Brown's motion for summary judgment, Dkt. 36, is DENIED.

2. Defendants' motion for summary judgment, Dkt. 31, is GRANTED IN PART, consistent with the opinion above. The case will proceed to trial against defendants Jason Chatman, Sandra Ashton, and Matthew Blair.

3. Defendant Lindsay Walker is DISMISSED from the case.

Entered August 13, 2019.

BY THE COURT:
/s/

_____
JAMES D. PETERSON
District Judge